**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

JPMORGAN CHASE BANK, N.A.                                                                APPELLANT

v.           No. 3:11CV00249 JLH (LEAD)
             No. 3:11CV00250 JLH
             No. 3:11CV00251 JLH

DANIEL L. JOHNSON; SUSAN DIANE
JOHNSON; TRACY LEA ESTES;
and TAMMY RENAE PEEKS                                                                    APPELLEES

*********************************************************************

KAREN RIVERA                                                                             PLAINTIFF

v.           No. 3:11CV00198 JLH

JPMORGAN CHASE BANK, N.A.                                                                DEFENDANT

*********************************************************************

JERE T. JONES                                                                            PLAINTIFFS
and TERI JONES

v.           No. 3:11CV00172 JLH

JPMORGAN CHASE BANK, N.A.                                                                DEFENDANT

**MEMORANDUM OPINION**

The question before the Court is whether a national banking association chartered by the Office of the Comptroller of the Currency but not registered with the Arkansas Secretary of State or the Arkansas Bank Department may use the nonjudicial foreclosure procedure provided by the Arkansas Statutory Foreclosure Act. This question is presented in each of the five cases listed above. The three cases in which JPMorgan Chase Bank, N.A.,[1] is the appellant are appeals from three

---

[1] JPMorgan Chase Bank, N.A., is the successor by merger to Chase Home Finance, LLC, which was the mortgagee in some of these cases.

bankruptcy proceedings that were consolidated for hearing and coordinated briefing schedule purposes. In each of the three bankruptcy cases, the bankruptcy court held that JPMorgan Chase Bank could not use the nonjudicial foreclosure procedures of the Statutory Foreclosure Act. In case No. 3:11CV00198, Karen Rivera seeks to recover damages and restitution on behalf of a class of persons subjected to nonjudicial foreclosure by JPMorgan Chase Bank. In case No. 3:11CV172, Jere T. Jones and Teri Jones seek to enjoin a nonjudicial foreclosure. The complaints in *Rivera* and *Jones* are predicated on the proposition that JPMorgan Chase Bank is not permitted to use the nonjudicial foreclosure process created by the Statutory Foreclosure Act. In *Rivera*, JPMorgan Chase Bank has moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In *Jones*, JPMorgan Chase Bank has moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

**I.**

In the three bankruptcy cases, the question before the bankruptcy court was whether the debtors owed foreclosure fees and costs listed on JPMorgan Chase Bank's proofs of claims. The bankruptcy court stated the facts of these three cases as follows:

> *The Johnson Case*
> Chase initiated non-judicial foreclosure proceedings, through Arkansas' Statutory Foreclosure Act, against a property owned by Daniel and Susan Johnson. On December 20, 2010, the Johnsons filed a Chapter 13 bankruptcy bringing that non-judicial foreclosure to a halt. In their bankruptcy case, the Johnsons filed a Chapter 13 plan listing Chase as a long-term secured creditor that was owed an arrearage of $7,485. On March 2, 2011, Chase filed the Johnson Objection to Confirmation claiming that the correct arrearage amount was $14,072.81. Chase filed a proof of claim in the case . . . claiming a secured debt of $187,468.21, which included the $14,072.81 arrearage, and explained that $1,380 of the arrearage was for foreclosure fees and costs. On July 4, 2011, Chase transferred the Johnson Proof of Claim to J.P. Morgan.

*The Peeks Case*

J.P. Morgan initiated a non-judicial foreclosure proceeding, through Arkansas' Statutory Foreclosure Act, against property owned by Tammy Renae Peeks. To initiate the foreclosure process, J.P. Morgan granted Wilson & Associates, P.L.L.C. . . . a limited power of attorney authorizing Wilson & Associates to conduct the foreclosure. On January 31, 2011, Ms. Peeks filed a Chapter 13 bankruptcy bringing the non-judicial foreclosure to a halt. On February 10, 2011, Ms. Peeks filed a proposed Chapter 13 plan that listed J.P. Morgan as a long-term secured creditor that was owed an arrearage of $7,500. On March 21, 2011, J.P. Morgan filed the Peeks Objection to Confirmation asserting that the correct arrearage amount was $10,089.19. J.P. Morgan filed a proof of claim in the Peeks case on July 13, 2011 . . . claiming a secured debt of $133,172.09, which included an arrearage of $9,516.72, and explained that $2,400.02 of the arrearage was for foreclosure fees and costs.

*The Estes Case*

Chase initiated non-judicial foreclosure proceedings, through Arkansas' Statutory Foreclosure Act, against a property owned by Tracy L. Estes. On September 8, 2010, Ms. Estes filed a voluntary petition for bankruptcy under Chapter 13, bringing that non-judicial foreclosure to a halt. On September 21, 2010, Ms. Estes filed a proposed Chapter 13 plan listing Chase as a long-term secured creditor that was owed an arrearage of $8,000. Chase filed the Estes Objection to Confirmation on October 20, 2010, asserting that the correct arrearage amount was $10,537.36. Chase filed a proof of claim in the Estes case on October 28, 2010 . . . claiming a secured debt of $37,041.96, which included an arrearage of $10,509.36, and explained that $2,706.56 of the arrearage was for [] foreclosure fees and costs. On May 25, 2011, Chase filed an amended proof of claim adjusting the arrearage from $10,509.36 to $10,502.22. On July 14, 2011, Chase transferred the Estes Proof of Claim to J.P. Morgan.

*In re Johnson*, 460 B.R. 234, 239 (Bankr. E.D. Ark. 2011) (footnote omitted).

As to the class action, Rivera seeks to certify a class composed of Arkansas residents who were subject to nonjudicial foreclosure proceedings by JPMorgan Chase Bank in Arkansas within the past five years. The *Rivera* complaint alleges that JPMorgan Chase Bank violated Arkansas's Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101, *et seq.*, by initiating nonjudicial foreclosure proceedings pursuant to the Statutory Foreclosure Act "against hundreds, if not thousands, of Arkansas residents throughout the state during the past five years, without meeting the strict statutory requirement that [JPMorgan Chase Bank] be authorized to do business in the State

of Arkansas." The complaint also states an unjust enrichment claim based on the allegation that JPMorgan Chase Bank's use of the Statutory Foreclosure Act was unauthorized.

With respect to the fifth case, the Joneses own a home secured by a mortgage in favor of JPMorgan Chase Bank. The Joneses allege that JPMorgan Chase Bank seeks to foreclose on their home using the Statutory Foreclosure Act. They contend that JPMorgan Chase Bank may not use the Act because it is not authorized to do business in Arkansas. The Joneses filed suit in state court and were granted a temporary injunction. Subsequently, JPMorgan Chase Bank removed the case to this Court based on diversity of citizenship.

The bankruptcy court held a consolidated hearing regarding JPMorgan Chase Bank's objections in each of the three bankruptcy cases. In its opinion issued after the hearing, the bankruptcy court stated that "[t]he parties stipulated that at the time of the foreclosure proceedings at issue in these cases, neither Chase nor J.P. Morgan was 'authorized to do business' in the state of Arkansas as required by § 18-50-117 of the Arkansas Statutory Foreclosure Act[.]" *In re Johnson*, 460 B.R. at 238-39; *see also id.* at 240 ("J.P. Morgan stipulated that it was not authorized to do business as is required [by] Ark. Code Ann. § 18-50-117."), at 241 ("J.P. Morgan stipulated that it was not in compliance with [section 18-50-117]."), at 241 n.5 ("The Court notes that no explanation is provided by the statute regarding what action is required in order to be authorized to do business under Ark. Code Ann. § 18-50-117. . . . Following a review of other provisions within the Arkansas Code, it appears that this requirement generally demands that a party obtain a certificate of authority from the secretary of state. . . . However, no such determination is necessary in these cases because J.P. Morgan stipulated that it was not so authorized."). The transcript shows, however, that the parties stipulated as follows:

> [Counsel for the debtors/appellees]: Chase's counsel has stipulated that JP Morgan Chase, Chase Home Finance, LLC -- no, Chase Home -- it's -- I mean Chase –
>
> [Counsel for JPMorgan]: It's JP Morgan Chase Bank, N.A.
>
> [Counsel for the debtors/appellees]: -- N.A. is not a bank registered with the Secretary of State as an entity to conduct business in Arkansas and is not registered as an out of state bank doing business in Arkansas with the Arkansas Bank Department; clarify that they are not registered with either entity.

No. 3:11CV249, Doc. #12-1; No. 3:11CV250, Doc. #18-1; No. 3:11CV251, Doc. #14-1. Thus, the stipulation was more limited than the bankruptcy court recognized. The parties stipulated that JPMorgan Chase Bank was registered neither with the Arkansas Secretary of State nor with the Arkansas Bank Department, but JPMorgan Chase Bank did not stipulate that it was not authorized to do business in Arkansas as required by section 18-50-117.

As the parties agree, the issue of whether JPMorgan Chase Bank is authorized to do business in Arkansas within the meaning of Ark. Code Ann. § 18-50-117 is properly before the Court in all five cases.

## II.

The standard of review is different for the bankruptcy appeals as compared to the *Rivera* and *Jones* cases. " 'When a bankruptcy court's judgment is appealed to the district court, the district court acts as an appellate court and reviews the bankruptcy court's legal determinations de novo and findings of fact for clear error.' " *Fix v. First State Bank of Roscoe*, 559 F.3d 803, 808 (8th Cir. 2009) (quoting *In re Falcon Prods., Inc.*, 497 F.3d 838, 840-41 (8th Cir. 2007)).

Dismissal pursuant to Rule 12(b)(6) "is proper where the plaintiffs' complaint fails to state a claim upon which relief can be granted." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). While Rule 8(a)(2) does not require a complaint to contain detailed factual

allegations, it does require a plaintiff to state the grounds of his entitlement to relief, which requires more than mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007). In ruling on a motion to dismiss, the Court must accept as true all factual allegations in the complaint and review the complaint to determine whether its allegations show that the plaintiff is entitled to relief. *Schaaf*, 517 F.3d at 549. "[A]ll reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004). The Court need not, however, accept as true legal conclusions, even those stated as though they are factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009).

"As a general rule, a Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a 12(b)(6) motion to dismiss." *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010). "When considering a motion for judgment on the pleadings (or a motion to dismiss under Fed. R. Civ. P. 12(b)(6)), the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (internal quotation marks and citations omitted).

Regardless of the standard of review, the central issue in all five cases is purely a question of law: whether a national banking association chartered by the Office of the Comptroller of the Currency pursuant to the National Bank Act is authorized to do business in Arkansas as required by section 18-50-117 of the Arkansas Statutory Foreclosure Act.

### III.

It is undisputed that JPMorgan Chase Bank, N.A., is chartered by the Office of the Comptroller of the Currency pursuant to the National Bank Act.[2] JPMorgan Chase Bank contends that, as a national banking association, it is authorized to do business in Arkansas within the meaning of section 18-50-117.  In the alternative, JPMorgan Chase Bank contends that the bankruptcy court erred in holding that the National Bank Act did not expressly or impliedly preempt section 18-50-117 to the extent that that provision requires a national bank to register with the Arkansas Secretary of State, the Arkansas Bank Commissioner, or some other state authority, in order to avail itself of the Statutory Foreclosure Act.  JPMorgan Chase Bank also argues that if section 18-50-117 imposes a registration requirement on national banks, then it violates the negative implication of the Commerce Clause, sometimes referred to as the dormant Commerce Clause.  Finally, JPMorgan Chase Bank contends that the bankruptcy court violated its due process rights and, further, erred in awarding attorneys' fees to the appellees.

The National Bank Act vests in national banks certain enumerated powers.  12 U.S.C. § 24; *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11, 127 S. Ct. 1559, 1566, 167 L. Ed. 2d 389 (2007); *First Nat'l Bank of E. Ark. v. Taylor*, 907 F.2d 775, 777 (8th Cir. 1990).  The Act also grants to national banks "all such incidental powers as shall be necessary to carry on the business of banking" throughout the United States.  12 U.S.C. § 24; *Watters*, 550 U.S. at 11, 127 S. Ct. at 1566; *Bank One, Utah v. Guttau*, 190 F.3d 844, 848 (8th Cir. 1999) (per curiam); *see also* 12 U.S.C. § 42 ("The

---

[2] *See also In re Hollingworth*, 453 B.R. 32, 35 (Bankr. D. Mass. 2011) ("Courts may take judicial notice that a bank is a national bank of the bank is described by name as a 'national' bank.") (collecting circuit decisions); *Excelsior Funds, Inc. v. JPMorgan Chase Bank, N.A.*, 470 F. Supp. 2d 312, 313 (S.D.N.Y. 2006) (JPMorgan Chase Bank, N.A., "is a national banking association[.]").

provisions of all Acts of Congress relating to national banks shall apply in the several States[.]").[3] Thus, the National Bank Act authorizes JPMorgan Chase Bank to conduct the business of banking within Arkansas.[4]

---

[3] JPMorgan Chase Bank also notes that Arkansas's bank regulators and General Assembly acknowledge that national banks are authorized to do business in Arkansas pursuant to federal law. Specifically, various resolutions from Arkansas's Banking Board and a Policy Statement from Arkansas's Bank Commissioner authorize Arkansas's state banks to engage in those banking activities which national banks are authorized to perform by the National Bank Act or the Office of the Comptroller of the Currency. *See* Resolution of the State Banking Board (Oct. 16, 1984); Resolution of the State Banking Board (Mar. 8, 1983); Policy Statement, Order of the State Bank Commissioner, Ark. Admin. Code 210.00.13 (May 3, 2000). Furthermore, section 23-45-102(a)(5)(A) of Arkansas's Banking Act of 1997 defines a "Bank" as "a state bank or a national bank or an out-of-state state-chartered bank that has received a certificate of authority under § 23-48-1001." This provision's distinction between "a national bank," which is not required to obtain a certificate of authority, and "an out-of-state state-chartered bank" which is required to do so, indicates that Arkansas's General Assembly understands that a national bank is authorized do business in Arkansas pursuant to federal law.

[4] While the debtors concede that JPMorgan Chase Bank is authorized under the National Bank Act to carry on the business of banking in Arkansas, they argue that this authorization does not satisfy section 18-50-117 of the Statutory Foreclosure Act because that provision is part of an act dealing with foreclosing, which is not a banking activity. This distinction does not comport with the plain language of section 18-50-117. That provision draws no distinction between the business of banking and other types of business. Furthermore, the distinction championed by the appellees is curious in light of the fact that the Statutory Foreclosure Act, by its terms, only permits financial institutions, not businesses generally, to avail themselves of its provisions. *See* Ark. Code Ann. § 18-50-116 (use of the Statutory Foreclosure Act limited to mortgage companies, banks, or savings and loans associations). Regardless, the activity of foreclosing on a debt when a borrower defaults "is closely related to an express power [granted to national banks by the National Bank Act,] and is useful in carrying out the business of banking." *Taylor*, 907 F.2d at 778 ("The 'incidental powers' of national banks are not limited to activities that are deemed essential to the exercise of express powers."). As the debtors concede, "[t]he NBA specifically authorizes federally chartered banks to engage in real estate lending." *Watters*, 550 U.S. at 7, 127 S. Ct. at 1564 (citing 12 U.S.C. § 371). The power to engage in real estate lending would be rendered a nullity if national banks could not also foreclose when the borrower defaulted. *See also* Frank Maguire, Senior Deputy Comptroller for Corporate Activities and Policy Analysis, O.C.C. Interpretive Letter No. 646, 1994 WL 568014 (Sept. 1994) ("Lending includes not only the initial extension of credit but also collecting payments, *foreclosing on collateral if the debtor defaults*, and managing [] assets.") (emphasis added).

Whether JPMorgan Chase Bank, simply in virtue of being a national banking association, is authorized to do business in Arkansas pursuant to section 18-50-117 is a question of statutory interpretation. In Arkansas,

> [t]he basic rule of statutory construction is to give effect to the intent of the General Assembly. In determining the meaning of a statute, the first rule is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. [The] court construes the statute so that no word is left void, superfluous, or insignificant, and meaning and effect are given to every word in the statute if possible. When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to resort to rules of statutory construction. However, [the] court will not give statutes a literal interpretation if it leads to absurd consequences that are contrary to legislative intent. [The] court seeks to reconcile statutory provisions to make them consistent, harmonious, and sensible.

*Mamo Transp., Inc. v. Williams*, 375 Ark. 97, 100, 289 S.W.3d 79, 83 (2008) (citations omitted).

The Arkansas Statutory Foreclosure Act was enacted in 1987 and amended in 1989, 1999, 2003, and 2011. In 2003, the Arkansas General Assembly added section 18-50-117. That provision provides: "No person, firm, company, association, fiduciary, or partnership, either domestic or foreign, shall avail themselves of the procedures under this chapter unless authorized to do business in this state."

In determining the meaning of this provision, the Court has reviewed the Statutory Foreclosure Act in its entirety, as well as related statutes that address non-Arkansas entities' authority to do business in Arkansas. Another section of the Statutory Foreclosure Act, Ark. Code Ann. § 18-50-102, specifies the entities and persons who can serve as trustees under the Act. As initially enacted, section 18-50-102(a)(2) included any "[b]ank or savings and loan association authorized to do business under the laws of Arkansas or those of the United States[.]" This subsection was not

altered by the 1989, 1999, and 2003 amendments to the Act.[5] Thus, section 18-50-102(a)(2) demonstrates that, within the context of the Statutory Foreclosure Act, an entity can be authorized to do business in Arkansas pursuant either to state law or federal law. The Wingo Act, Ark. Code Ann. §§ 4-27-1501, *et seq.*, provides the mechanism for a foreign corporation to obtain authority to transact business in Arkansas. That Act provides that an entity can be authorized to transact business in Arkansas by obtaining a certificate of authority from the Secretary of State. *See* Ark. Code Ann. § 4-27-1503.[6] Elsewhere, the Arkansas Code provides that in some instances an out-of-state bank with business in the State of Arkansas must "apply for a certificate of authority to transact banking business in this state" by delivering "an application to the Bank Commissioner for filing." Ark. Code Ann. § 23-48-1001.[7] In summary, the Arkansas Statutory Foreclosure Act in section 18-50-102(a)(2) provides that a bank may be authorized to do business in Arkansas either by state or federal law; the Wingo Act specifies that a foreign corporation may obtain authority to transact business in Arkansas by obtaining a certificate from the Arkansas Secretary of State; and the Arkansas banking statutes provide that in some instances an out-of-state bank must obtain a certificate from the Arkansas Bank Commissioner.

---

[5] Effective July 27, 2011, section 18-50-102 of the Statutory Foreclosure Act was amended by the Arkansas General Assembly. Those amendments do not affect the outcome here.

[6] Section 4-27-1501 states that "[a] foreign corporation may not transact business in this state until it obtains a certificate of authority from the Secretary of State[,]" but provides an extensive, non-exhaustive list of activities which "do not constitute transacting business within the meaning of" this section. One activity exempted from the Wingo Act is "[s]ecuring or collecting debts or enforcing mortgages and security interests in property securing the debts[.]" Ark. Code Ann. § 4-27-1501(b)(8).

[7] When the parties stipulated during the bankruptcy hearing that JPMorgan Chase Bank was registered neither with the Secretary of State nor with the Arkansas Bank Department, they were referring to the Wingo Act and section 23-48-1001, *et seq.*

Section 18-50-117 uses the broadest language available in the light of these other statutory provisions. As noted above, that section provides that to use the Statutory Foreclosure Act an entity must be "authorized to do business in this state." Section 18-50-117 has no qualifying phrase limiting the Act to entities authorized to do business "under the laws of the State of Arkansas," as does a portion of section 18-50-102(a)(2); nor does it require a certificate of authority from the Arkansas Secretary of State, as does the Wingo Act; nor does it require a certificate of authority from the Arkansas Bank Commissioner, as does section 23-48-1001. Instead, section 18-50-117 requires only that an entity be "authorized to do business in this state." In light of the General Assembly's recognition, within the Statutory Foreclosure Act, that an entity may be authorized to do business in Arkansas pursuant either to state or federal law, that section 18-50-117 only requires an entity to be authorized to do business in Arkansas means that such authorization can be obtained pursuant either to state or federal law.[8] Similarly, section 4-27-1503 and section 23-48-1001 demonstrate that the General Assembly knows how to impose a requirement that a certificate of authority be obtained from a state officer when that is what is intended. Had the General Assembly intended to require that an entity obtain a certificate of authority from the Arkansas Secretary of State, the Arkansas Bank Commissioner, or some other state office, as a prerequisite to performing nonjudicial foreclosures, the Statutory Foreclosure Act would have said so. *See Chatelain v. Kelley*, 322 Ark. 517, 524, 910 S.W.2d 215, 219 (1995) ("[T]he General Assembly knows how to include the proper terminology or exclude it in accordance with its intent[.]"), *overruled on other grounds by Aka v. Jefferson Hosp. Ass'n, Inc.*, 344 Ark. 627, 42 S.W.3d 508 (2001); *Hales v. State*, 299 Ark. 93, 94, 771 S.W.2d 285,

---

[8] As noted above, the National Bank Act authorizes national banks to carry on the business of banking, including foreclosing on real estate debts, in each of the several states.

286 (1989) (where the Arkansas General Assembly demonstrated the ability to provide qualifying statutory language, but subsequently did not do so, the Arkansas Supreme Court presumed that the General Assembly did not intend to do so). Instead of requiring a certificate of authority from the Secretary of State or the Arkansas Bank Commissioner, the Arkansas General Assembly required only that an entity be "authorized to do business in this state."[9]

## CONCLUSION

A national bank chartered by the Office of the Comptroller of the Currency is authorized to do business within Arkansas, which is all that is required by Ark. Code Ann. § 18-50-117. Therefore, as a national banking association, JPMorgan Chase Bank, N.A., was authorized to avail itself of the Arkansas Statutory Foreclosure Act.[10] The Court will issue an appropriate order in each of the five cases.

IT IS SO ORDERED this 11th day of May, 2012.

*J. Leon Holmes*

J. LEON HOLMES
UNITED STATES DISTRICT COURT

---

[9] Several Arkansas statutes use the phrase "a bank authorized to do business in this state" or an equivalent. Ark. Code Ann. §§ 6-3-109, 19-5-1245, 19-8-101, 22-3-1415, 24-11-805. All of these statutes authorize placement of public funds in a bank authorized to do business in this state. It does not appear from their context that the Arkansas General Assembly intended to exclude national banks when using that phrase in those statutes.

[10] The Court need not, and does not, address JPMorgan Chase Bank's preemption, commerce clause, or due process arguments.